TYSON FOODS, INC. *v.* Lucille WATKINS

CA 89-494                                      792 S.W.2d 348

Court of Appeals of Arkansas
Division I
Opinion delivered July 5, 1990

*Bassett Law Firm*, by: *Gary V. Weeks*, for appellant.

*Gerald D. Lee*, for appellee.

JOHN E. JENNINGS, Judge. This is a workers' compensation case. Lucille Watkins, the appellee, was first employed by Tyson Foods, Inc., the appellant, in 1981. Originally she "candled eggs." In 1986 she began working on an assembly line, laying pieces of frozen chicken on plates as they passed by. There was evidence that these duties required the continuous use of her arms in a rapid, repetitious manner. In 1987 appellee began experiencing pain in her right elbow and on July 27, 1987, she was diagnosed by Dr. Bryan Abernathy as having bilateral epicondylitis, or "tennis elbow." Dr. James Moore also saw the appellee and expressed his opinion that the epicondylitis was caused by her employment.

The administrative law judge awarded compensation and found that the claimant's condition was an occupational disease. The employer appealed to the full Commission on the basis that the ALJ's decision was "contrary to the law" and "contrary to the evidence." The Commission affirmed the decision of the administrative law judge, but found that the claimant's bilateral epicondylitis was an occupational injury rather than an occupational disease.

On appeal to this court appellant argues: (1) that the Commission erred in raising and deciding the issue of whether the claimant's condition was an occupational disease or an injury, since that issue was not raised on appeal; (2) that the Commission's characterization of the condition as an occupational injury was wrong as a matter of law; and (3) that the Commission's characterization was not supported by substantial evidence. We disagree and affirm.

■ The reason that the characterization makes a difference is that the burden of proof is affected. If the claimant's condition is an "injury," she has the burden of proving that it arose out of and in the course of her employment by a preponderance of the evidence. *See* Ark. Code Ann. § 11-9-704(c)(2). On the other hand, if her condition is an "occupational disease," a causal connection between the employment and the disease must be established by clear and convincing evidence. Ark. Code Ann. § 11-9-601(e)(1).

■ The sole authority offered by appellant in support of the argument that the Commission was without authority to decide

the issue is Ark. Code Ann. § 11-9-711(a)(1) and (2). The first subsection provides that the ALJ's order becomes final unless appealed from within thirty days; the second provides for cross-appeal. We do not agree that the cited code provisions limit the Commission's authority to raise issues on its own. As we said in *McCoy* v. *Preston Logging*, 21 Ark. App. 68, 728 S.W.2d 520 (1987):

> Commission Rule 25(b), which relates to the scope of review on appeal to the Commission, provides as follows:
>
>> All legal and factual issues should be developed at the hearing before the Administrative Law Judge or single Commissioner. The Commission may refuse to consider issues not raised below.
>
> In *American Transportation Co.* v. *Payne*, 10 Ark. App. 56, 661 S.W.2d 418 (1983), this court noted that Rule 25 does not preclude the Commission from reviewing issues not appealed from or not raised at the administrative law judge level if it so chooses. 10 Ark. App. at 61. The Commission reviews cases appealed from the administrative law judge level *de novo*, and the duty of the Commission is not to determine whether there was substantial evidence to support the Administrative Law Judge's decision; rather, it must make its own findings in accordance with a preponderance of the evidence. Hence, while the Commission has the statutory authority to require that parties specify in their notice of appeal to the Commission all issues to be presented, this does not negate the Commission's authority to hear argument on other issues.

■ When the case at bar was appealed to the full Commission, it had the duty to decide the facts *de novo*. It is obviously essential to the performance of that function that the Commission know what the applicable burden of proof in the case is. Here, the burden of proof turns on whether the appellee's condition is characterized as an occupational disease or an injury and it was incumbent on the Commission to make that determination. We see no reason to hold that it was bound by the characterization adopted by the administrative law judge.

· Appellant's second and third arguments are so related that we treat them together. "Occupational disease" is now defined as "any disease that results in disability or death and arises out of and in the course of the occupation or employment of the employee, or naturally follows or unavoidably results from an injury as. . . ." Ark. Code Ann. § 11-9-601(e)(1). Silicosis and asbestosis are dealt with separately. Ark. Code Ann. § 11-9-602. Prior to 1976, the legislature listed a schedule of occupational diseases. *See* Ark. Stat. Ann. § 81-1314 (Repl. 1960). Included in the schedule were "synovitis, tenosynovitis, or bursitis due to an occupation involving continual or repeated pressure on the parts affected." Ark. Stat. Ann. § 81-1314(a)(5)(4) (Repl. 1960). Appellant's argument is that, while epicondylitis was not listed under the old schedule, it is so similar to synovitis, tenosynovitis, and bursitis that it should be considered an occupational disease. In support of the argument appellant cites R.B. Leflar, *Compensation for Work Related Illness in Arkansas*, 41 Ark. L. Rev. 89 (1988):

> One can . . . conclude without undue difficulty that diseases listed on the pre-1976 schedule should continue, for the present, to be analyzed under section 14 [occupational disease] standards. When the legislature repealed the schedule, presumably it intended that conditions previously covered by section 14 should remain in the same status, at least in the absence of evidence supporting a change of treatment. In keeping with this reasoning, the Court of Appeals has recognized that cases of tenosynovitis (inflammation of a tendon sheath), a condition listed on the old schedule, should be decided under section 14. Leflar, *supra* at 99.

The case cited by Professor Leflar is *Sanyo Mfg. Corp.* v. *Leisure*, 12 Ark. App. 274, 675 S.W.2d 841 (1984). In *Sanyo*, the parties conceded that tenosynovitis was properly characterized as an occupational disease, and thus that issue was not before us.

We agree with several of the guidelines suggested by Professor Leflar for use in determining whether a condition is an injury or occupational disease. (1) Where the ambiguity of the statutory language permits alternative interpretations, the Commission and courts should generally resolve the ambiguity in

favor of claimants. This, as Leflar points out, is mandated by Ark. Code Ann. § 11-9-704(c)(3) (1987). (2) The Commission's categorization efforts should be based not simply on how the medical profession may characterize a given condition, but rather primarily on factors germane to the purposes of workers' compensation law. These factors should include the general remedial goals of the act, efficiency of future claim handling, the extent to which the classification being considered would encourage safer employment practices, and avoidance of unacceptably high costs to the system. (3) The initial presumption should be that conditions on the pre-1976 schedule of compensable occupational diseases are still to be handled under section 14, although the Commission is not required to do so since the schedule has been repealed. Leflar, *supra* at 118-120.

■ In view of the fact that bilateral epicondylitis was not listed in the pre-1976 schedule, and giving consideration to those factors listed in Leflar's suggested guidelines, we find no error in the Commission's characterization of appellee's condition as an occupational injury.

Affirmed.

CORBIN, C.J., and ROGERS, J., agree.