## Gerald COOK *v.* ALUMINUM COMPANY OF AMERICA

CA 90-304                                     811 S.W.2d 329

Court of Appeals of Arkansas
Division I
Opinion delivered June 12, 1991

*Gibson, Ellis & Tedder*, by: *George D. Ellis*, for appellant.

*Rose Law Firm, A Professional Association*, by: *Phillip Carroll*, for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a decision of the Arkansas Workers' Compensation Commission holding that appellant's claim for wage loss benefits was barred by that portion of Act 10 of the Second Extraordinary Session of 1986, which is codified as Ark. Code Ann. § 11-9-522(b) (1987), and which provides that an injured employee who has returned to work at wages equal to what he was making at the time of injury shall not be entitled to benefits in excess of his permanent physical impairment.

At a hearing before the administrative law judge held on August 10, 1989, it was stipulated that appellant suffered a compensable injury on May 24, 1988; that his average weekly wage was $539.00; that all medical bills and appropriate temporary total disability had been paid; and that he was being paid compensation at the rate of $154.00 per week based on a 17%

permanent partial disability. Appellant contended that he was permanently and totally disabled, or, in the alternative, that he had sustained a degree of permanent partial disability in excess of the doctors' anatomical rating of 17%.

The appellant was 57 years old at the time of the hearing. He is a high school graduate who had worked for appellee for 35 years. On May 24, 1988, while working the night shift, he fell approximately fifteen feet from a ladder and landed on his back. He was hospitalized for approximately two weeks with a compression fracture at T-12, recuperated at home and returned to work on December 5, 1988. Two doctors, both orthopedic specialists, one of whom was appellant's treating physician, authorized appellant's return to work, and both doctors agreed that he had a permanent physical impairment rating of 17% to the body as a whole. On September 27, 1988, a report from the treating doctor stated appellant could return to work in two months, but he "will have some permanent limitation of the heavy lifting, sudden vigorous twisting, and will have some level of permanent discomfort in his back as a result of this compression fracture."

Appellant testified that his back hurts at times when he is working and that at times other employees help him with heavy lifting activities. He testified that he makes the same hourly rate that he made before his injury. However, he said that based on "seven or so" weeks prior to his injury and the "ten or so weeks" immediately preceding the hearing, he was now making "around" $60.00 per week less than before his injury. He acknowledged that this calculation included overtime pay and that overtime was in greater supply before his injury. His classification has not changed, and he has never been refused overtime since his return to work. His injury does not prevent him from working overtime; he has accepted overtime work four of the five times it has been offered since his return to work; he is one of four employees in his classification eligible for overtime work; generally this work is offered to the one who has the least accumulated overtime.

A certified rehabilitation counselor testified by deposition, and a report made by him to appellant's counsel was introduced into evidence. The conclusion of that report reads as follows:

It is my opinion, therefore, that because of Mr. Cook's age, physical impairment, and vocational background that he would not be employable by any other firm or business, whose job description and work requirements were the same as the position he now holds.

On appeal, it is appellant's first argument that except for Ark. Code Ann. § 11-9-522(b) (1987), this is a "classic case" for the application of *Glass* v. *Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961). The holding of that case was succinctly explained by Justice David Newbern, while a judge on the Arkansas Court of Appeals, as follows:

> The Arkansas Supreme Court long ago departed from the restrictive view that only anatomical or functional disability could be considered in determining disability to the body as a whole. The departure came in *Glass* v. *Edens* . . . and since that case was decided we have been among the great majority of jurisdictions which allow consideration of several factors in determining not just functional bodily limitations, but loss of earning capacity as a predicate for workers' compensation.

*M.M. Cohn* v. *Haile*, 267 Ark. 734, 736, 589 S.W.2d 600 (Ark. App. 1979). However, appellant admits that Ark. Code Ann. § 11-9-522(b) (1987), *if applicable to this case*, would prevent the Commission from giving consideration to the appellant's age, education, experience and other matters affecting wage loss, *see Glass* v. *Edens*, 233 Ark. at 788, *in addition* to the medical evidence that appellant sustained a 17% *physical* impairment to the body as a whole. Ark. Code Ann. § 11-9-522(b) reads as follows:

> In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his future earning capacity. However, so long as an employee, subsequent to his injury, has returned to work, has obtained other employment, or has a bona fide and reasonably obtainable offer to be employed at wages

equal to or greater than his average weekly wage at the time of the accident, he shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by a preponderance of the medical testimony and evidence.

But it is appellant's contention that this section of the workers' compensation law does not apply in this case because the appellee has "totally failed in its proof to meet its burden" to show that appellant has returned to work "at wages equal to or greater than his average weekly wage at the time of the accident."

Appellant argues that the word "wages" is not defined and "it makes absolutely no difference why or under what circumstances wages are less after an accident than they were before," but if the claimant is not making preinjury wages "then the respondent has failed in its affirmative proof and the statute is inapplicable." The appellee counters with the argument that "we cannot tell" whether the Commission decided this case on the equality of wages theory since appellant failed to prove by a preponderance of the evidence that his future earning capacity was affected sufficiently to entitle him to a disability rating in excess of 17%.

We think it is clear that the Commission's decision was based upon Ark. Code Ann. § 11-9-522(b). The Commission plainly stated:

Payments were voluntarily made for a 17% permanent anatomical impairment rating, but the claim for wage loss benefits is barred by that portion of Act 10 of 1986 which is codified as Ark. Code Ann. § 11-9-522(b) (1978).

Thus, the Commission held that appellant's claim for "wage loss benefits" in excess of the physical or anatomical impairment was "barred" by section 11-9-522(b). Moreover, it is our duty to review the decision of the Commission to determine whether it is supported by the facts found by the Commission. *Mosley* v. *McGehee School District*, 30 Ark. App. 131, 783 S.W.2d 871 (1990); *Wright* v. *American Transportation*, 18 Ark. App. 18, 709 S.W.2d 107 (1986). In appeals from the Commission, we cannot indulge the presumption used in appeals from trial courts, *see Morgan* v. *Downs*, 245 Ark. 328, 432 S.W.2d 454 (1968), and

*Hyde* v. *Quinn*, 298 Ark. 569, 769 S.W.2d 24 (1989), that even if the court states the wrong reason, we will affirm if the judgment is correct.

■ We think it is also clear as to which party has the burden of proof on the issue of whether the injured party has returned to work at wages equal to or greater than his average weekly wage at the time of the accident. To obtain benefits, it is the claimant's burden to show that injury or death of the employee was the result of an accidental injury that arose in the course of the employment, and that it grew out of, or resulted from, the employment. *Farmer* v. *L.H. Knight Company*, 220 Ark. 333, 336, 248 S.W.2d 111, 113 (1952). However, Ark. Code Ann. § 11-9-522(c)(1) (1987) specifically provides:

> The employer or his workers' compensation insurance carrier shall have the burden of proving the employee's employment, or the employee's receipt of a bona fide offer to be employed, at wages equal to or greater than his average weekly wage at the time of the accident.

So, Ark. Code Ann. § 11-9-522, which contains the provision about the wages after injury being equal to or greater than the wages at the time of the injury, also contains a provision stating which party shall have the burden of proving that the wages were the same after the injury as they were at the time of injury. Both provisions were part of Section 5 of Act 10 of the Second Extraordinary Session of 1986, which amended Ark. Stat. Ann. § 81-1313(d). *See* Volume 1, Book 2, *General Acts of Arkansas 1987* at 2914.

■ It may not be clear, however, as to what the word "wages" or the term "average weekly wages" as used in Ark. Code Ann. § 11-9-522(b), means in all cases. It is true that the general "Workers' Compensation Law" contains a section on definitions and that "wages" is defined therein. *See* Ark. Code Ann. § 11-9-102(8) (1987). As an aside, it might also be noted that under this section, the word "wages" can mean more than *money* paid for services rendered. It is also true that Ark. Code Ann. § 11-9-518 provides that "average weekly wage" shall not be computed on less than a full-time workweek; that the section gives directions on how to determine "average weekly wages" for employees working on a "piece basis," and for overtime earnings;

and there is a general provision that allows the Commission to determine "average weekly wage" by a method that is "just and fair" where required by exceptional circumstances. But there may be cases where there is room for argument on the issue of whether an employee's "wages" after injury are equal to or greater than his "average weekly wage" at the time of the accident in which he was injured. There seems, however, to be no problem in this regard that would affect the validity or constitutionality of Ark. Code Ann. § 11-9-522(b).

■ Appellant did present constitutional questions to the Commission and they are argued here. But to conclude our discussion of his first argument—that section 11-9-522(b) does not apply in the instant case because the appellee failed to meet its burden of showing that appellant returned to work at wages equal to or greater than his average weekly wage at the time of accident—we think there is substantial evidence to support the Commission's decision on that issue. Although the weeks selected by appellant for comparison show that he earned less after his injury than he was earning at the time of the accident, the difference results from the fact that he did not work as much overtime after his injury as he did before his injury. Appellant admits his hourly rate was the same before and after his injury.

■ The brief filed for the appellant expresses concern over the possibility that the employer has, or may, simply put appellant back to work for a few hours a week, at the same hourly rate, in order to claim the application of section 11-9-522(b) and prevent a determination of disability based upon *Glass* v. *Edens* considerations. But Ark. Code Ann. § 11-9-522(d) (1987), provides as follows:

> In accordance with this section, the commission may reconsider the question of functional disability and change a previously awarded disability rating based on facts occurring since the original disability determination, if any party makes application for reconsideration within one (1) year after the occurrence of the facts.

This provision appears to be sufficient to prevent an employer from just keeping or putting an injured employee on the payroll in order to invoke the application of section 11-9-522(b). Other provisions of the compensation law might also be applicable in

this regard. But there is substantial evidence in this case that at the time of the hearing before the law judge the appellant was employed and making wages equal to his average weekly wage at the time of his accident. Future events may change this situation, and no definitive answer can be given with respect to all questions that may arise concerning the application of this statute, but the Commission is not stripped of its authority or ability to deal with those issues when they are presented.

■■ With regard to appellant's constitutional arguments, we first note that there is a presumption of constitutionality attendant to every legislative enactment. *Hamilton* v. *Jeffrey Stone Co.*, 25 Ark. App. 66, 752 S.W.2d 288 (1988). One contention made by appellant is that section 11-9-522(b) allows an employer—by continuing to pay the same wages to an injured employee—to determine whether the employee receives compensation for the wage-loss disability he has sustained. *Crowly* v. *Thornbrough*, 226 Ark. 768, 294 S.W.2d 62 (1956), is cited in support of this contention. That case held that legislation which allowed the Secretary of Labor of the United States to fix the minimum wage scale to be paid in certain areas of the state was an unlawful delegation of legislative authority in violation of the Arkansas Constitution. But if the legislature can fix the amounts to be paid for disability sustained by injured workers, it can surely limit compensable disability to the percentage of physical impairment for as long as the employee's wages are the same after the injury. Whether this situation exists, the amounts involved, and other questions that may arise may constitutionally be left to the Commission to adjudicate. That, we find, is the effect of Ark. Code Ann. § 11-9-522 (1987).

■ Appellant also argues that section 11-9-522(b) violates the 14th amendment to the United States Constitution because there is "absolutely no 'nexus' between the statute and any governmental objective." He cites *Streight* v. *Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983), and *Love* v. *Hill*, 297 Ark. 96, 759 S.W.2d 550 (1988), in support of this argument. Those cases hold that the test of constitutionality is whether the legislation is rationally related to achieving a legitimate governmental objective. While we have not been cited to any similar legislation in other states, it seems obvious that our legislature was attempting to prevent the employer from being liable for benefits for the loss

206, 655 S.W.2d 459 (1983), and *Love* v. *Hill*, 297 Ark. 96, 759 S.W.2d 550 (1988), in support of this argument. Those cases hold that the test of constitutionality is whether the legislation is rationally related to achieving a legitimate governmental objective. While we have not been cited to any similar legislation in other states, it seems obvious that our legislature was attempting to prevent the employer from being liable for benefits for the loss of the ability to earn wages while the injured employee is actually earning wages equal to the wages he was earning at the time of his injury. This seems to be a legitimate governmental objective and not a product of utterly arbitrary and capricious government. *See Corbitt* v. *Mohawk Rubber Co.*, 256 Ark. 932, 511 S.W.2d 184 (1974) (statute which encourages employers to retain injured employees has a rational basis).

Affirmed.

CRACRAFT, C.J., and JENNINGS, J., agree.